## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

---------------------------------------------------------------- :
                                 :

BIN THERE USA, LLC, and :
THAT FRANCHISE, INC., :
                     Plaintiffs :

                                 :     Case No.  3:21cv00149
vs. :

                                 :

JOSEPH FARRAR, and :
EASY BINS OF VIRGINIA, LLC :
                                 :

                     Defendants. :

                                 :
---------------------------------------------------------------- :

## COMPLAINT

The Plaintiffs Bin There USA, LLC ("Bin There") and That Franchise, Inc. ("TFI"), by and through the undersigned counsel, allege as follows:

### PRELIMINARY STATEMENT

This action arises out of the termination of a franchisee who, in direct breach of its franchise agreement and despite numerous warnings, competed unfairly with its own franchise system and other franchisees. The franchisee operated a BIN THERE…DUMP THAT waste removal and disposal business, pursuant to a franchise agreement with Bin There. That agreement limits the territory in which the franchisee is licensed to use the franchisor's service marks and operate its business. Almost since the inception of its franchised business, the franchisee solicited customers and did business outside its licensed territory. Bin There placed the franchisee in default under the terms of the franchise agreement on two occasions, but the franchisee not only failed to cure its default, it also continued to do business in another BIN THERE…DUMP THAT franchisee's

territory *during the cure period*.  Bin There terminated the franchise agreement in accordance with its terms.  The former franchisee is continuing, however, to operate a waste removal and disposal business using Bin There's marks and system in a manner that is highly likely to cause confusion among consumers in breach of the post-termination provisions of its franchise agreements, as well as in violation of federal and state trademark and unfair competition law.  Bin There seeks declaratory and injunctive relief, as well as damages, attorneys' fees, and costs.

**THE PARTIES**

1.      Bin There is a Delaware limited liability company with its principal place of business in Mississauga, Ontario, Canada.  Bin There's sole member is the plaintiff That Franchise, Inc., an Ontario, Canada corporation with its principal place of business in Mississauga, Ontario, Canada.

2.      On information and belief, Easy Bins of Virginia, LLC ("EBV") is a Virginia limited liability company with its principal place of business in Fredericksburg, VA.  Joseph Farrar ("Farrar") is a citizen and resident of Virginia, and is the sole member of EBV.

**JURISDICTION AND VENUE**

3.      This is a civil action arising under the contracts between the parties.

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, 1367 and 2201-02.  The parties are citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.      Personal jurisdiction exists over the defendants, and venue is proper in this Court. As set forth below, both defendants reside in this judicial district and in this division.

## THE BIN THERE...DUMP THAT SYSTEM

6.     Bin There is the franchisor of the BIN THERE...DUMP THAT system of waste removal and disposal services in the United States.

7.     Bin There licenses to others the right to use  the business format it has created and developed for providing waste removal and disposal services (the "BTDT System"), using the federally registered BIN THERE...DUMP THAT trademark and related trade names and commercial symbols (the "BTDT Marks"). TFI owns the BTDT Marks, which it licenses to Bin There for use in the BIN THERE...DUMP THAT system.  TFI owns the  following federal registrations for the BTDT Marks:

| Mark | Registration No. | Registration Date |
|------|------------------|-------------------|
| BIN THERE DUMP THAT | 3,097,307 | May 30, 2006 |
| BIN THERE DUMP THAT RESIDENTIAL FRIENDLY DUMPSTERS and Design | 5,294,746 | September 26, 2017 |

8.     The logo used in the BTDT System is pictured below:



3

9.     BIN THERE...DUMP THAT businesses feature bins bearing the BTDT Marks that are a distinctive lime green color. A typical BIN THERE...DUMP THAT bin is pictured below:



10.     The principal market for the services of a BIN THERE...DUMP THAT business is residential homes and commercial properties whose owners contract to have bins placed on their property for the purpose of placing trash or waste in the bin for removal and disposal.

11.     Bin There has been franchising in the United States since 2011. There are currently more than 140 franchised locations in the United States, as well as approximately 40 in Canada.

**THE FRANCHISE AGREEMENT BETWEEN THE PARTIES**

12.     On or about March 16, 2016, EBV, as franchisee, entered into a BIN THERE....DUMP THAT Franchise Agreement ("Fredericksburg Franchise Agreement") with Bin There. Farrar executed a personal guarantee that is Exhibit E to the Fredericksburg Franchise Agreement. A copy of the   Fredericksburg Franchise Agreement is Exhibit 1 to this Complaint.

4

13. In the Fredericksburg Franchise Agreement, Bin There licensed EBV to use the BTDT Marks and System only in a defined territory. Section 1.1 of the Fredericksburg Franchise Agreement granted EBV "the right… to establish and operate Franchise in and for the territory described in Exhibit A. The Fredericksburg Franchise Agreement defines the term "Franchise" as a Business under the [BTDT] system, using the [BTDT] Marks."

14. The Territory defined by the Fredericksburg Franchise Agreement is set forth in Exhibit A to the agreement and consists of 19 zip codes from north of the city of Fredericksburg and continuing south to the very northern part of the City of Richmond ("the Fredericksburg Territory"). A copy of Exhibit A to the Fredericksburg Franchise Agreement is Exhibit 2 to this Complaint.

15. In its discussions with EBV and Farrar prior to the execution of the Fredericksburg Franchise Agreement, Bin There encouraged EBV and Farrar to include the entire City of Richmond in the Fredericksburg Territory. They refused to do so. Expansion of the licensed territory would have resulted in an increased initial franchise fee.

16. The Fredericksburg Franchise Agreement contains no grant of any kind to use the BTDT Marks or the BTDT System outside the Territory. In Section 12.2, EBV agreed that it would not use the Marks in other manner not explicitly authorized in writing by Bin There.

17. The territorial limit in the Fredericksburg Franchise Agreement, as well as other BIN THERE…DUMP THAT franchise agreements is designed to protect the franchisees' investment in their business by ensuring that the franchisee is free from having Bin There or other franchisees encroach on the exclusive right to operate under the BTDT Marks in a prescribed territory. In section 1.4 of the Fredericksburg Franchise Agreement, Bin There agreed not to operate or license a BIN THERE…DUMP THAT business in the Fredericksburg Territory during

the term of the Fredericksburg Agreement.  In section 1.5(a), EBV agreed that Bin There can operate or license a BIN THERE…DUMP THAT business outside the Fredericksburg Territory. In Section 12.1, EBV agreed that and any and all goodwill engendered or established under the Marks shall inure to the exclusive benefit of Bin There.

## EBV AND FARRAR'S SOLICITATION AND ACCEPTANCE OF BUSINESS OUTSIDE THE LICENSED TERRITORY

18.     As early as the spring of 2017, Bin There became aware that EBV was soliciting and accepting business outside its territory.

19.     In April 2017, Bin There informed EBV and Farrar that they should be focusing on the territory EBV actually purchased.  Bin There stated, in writing, that while EBV's servicing of areas outside the Territory posed no immediate problems, because there were no neighboring franchisees servicing these areas, at such time as those areas were awarded to a new franchise operator, EBV must turn that business over to the new franchisee because it fell outside the area awarded to EBV.  At that time and repeatedly thereafter, Bin There encouraged EBV and Farrar to concentrate on the territory they had purchased rather than soliciting business outside the Fredericksburg Territory.

20.     By 2018, it was clear that EBV was continuing to solicit and accept business outside its territory.  In fact, EBV had been doing substantial work in locations far outside its Territory, including Herndon, Richmond, and Warrenton, Virginia.  Indeed, in an email in October 2018, Mr. Farrar conceded that he was spending 70% of his time outside his Territory.

21.     Bin There followed up with an analysis of the leads generated by EBV in the previous three months, which showed that only 35 out of 89 were within the Fredericksburg Territory.  Farrar thanked Bin There for the analysis and for developing a plan to help him boost his business in the Fredericksburg Territory.  He signed off the email "Awesome".

6

22.     On August 15, 2019, Bin There executed a Franchise Agreement (the "Richmond Franchise Agreement") with MW Enterprises, Inc. ("MW") that awarded a territory that included the city of Richmond, and the area south and west of EBV's Territory (the "MW Territory"). A copy of the Territory Map attached to the Richmond Franchise Agreement is Exhibit 3 to this Complaint.

23.     The execution of the Richmond Franchise Agreement was communicated to EBV. Indeed, EBV was informed prior to the execution of the Richmond Franchise Agreement that the City of Richmond was being sold to another franchisee. Bin There informed EBV that EBV would have to turn over the business in the MW Territory to the new franchisee and cease doing business there.

24.     EBV failed to do so. Not only did it not turn over its existing business in the MW Territory, EBV continued soliciting and accepting business in the MW Territory.

## EBV AND FARRAR'S FAILURE TO USE THE BINTRACKER SOFTWARE PRESCRIBED BY BIN THERE

25.     Section 9.10 of the Fredericksburg Franchise Agreement requires EBV to use such software as Bin There specifies.

26.     Bin There specified the use of Bin Tracker, a software business management system developed by a third party.

27.     The required use of the Bin Tracker software is set forth in the Operations Manual.

28.     All franchisees are trained on the use of the Bin Tracker software at their initial training sessions. Farrar was trained on the use of the Bin Tracker software at his training session

7

29.     EBV and Farrar failed to use the Bin Tracker software. Although they subscribed to the service from the third party vendor, they did not use the software, dating back to 2017.

30.     Bin There repeatedly informed EBV and Farrar that they needed to use the Bin Tracker software.

## THE NOTICES OF DEFAULT AND TERMINATION OF THE
## FREDERICKSBURG FRANCHISE AGREEMENT

31.     Section 14.3 of the Fredericksburg Franchise Agreement authorizes Bin There to terminate the Fredericksburg Franchise Agreement if EBV fails to cure defaults within thirty days after receiving written notice of the default.

32.     On September 20, 2019, Bin There sent EBV a Notice of Default (the "2019 Notice") setting forth EBV's solicitation and acceptance of business outside the licensed Territory and the failure to use the Bin Tracker software as a default under Sections 1.1 and 9.10 of the Fredericksburg Franchise Agreement. The 2019 Notice stated that the Fredericksburg Franchise Agreement would terminate within thirty days if the defaults were not cured in accordance with the termination provisions of the Fredericksburg Franchise Agreement.

33.     Bin There and Farrar engaged in discussions over the next few weeks. Farrar and EBV agreed to cease soliciting and accepting business outside the licensed Territory, and to begin using Bin Tracker. Bin There agreed to withdraw the 2019 Notice.

34.     In January 2020, Bin There reiterated to Farrar, in writing, that the territory south of his, including Richmond, had been sold to another franchisee, and he would have to cease doing business in that territory.

35.     EBV and Farrar's cessation of the solicitation and acceptance of business outside the licensed Territory was short-lived at best.

8

36.     Shortly after MW began operating its BIN THERE…DUMP THAT franchise in the Richmond area on May 8, 2020 in the MW Territory, it began to see BIN THERE…DUMP THAT trucks and bins in its territory that belonged to EBV.  MW also received calls from customers requesting that it pick up its bins that they had rented, but the bins belonged to EBV.

37.     Bin There had several discussions with Farrar and informed him orally and in writing, by email dated August 27, 2020, that he needed to stop doing business outside the Fredericksburg Territory and within the MW Territory.

38.     Farrar never responded to the August 27, 2020 email.

39.     EBV and Farrar continued to do business in the MW territory.

40.     In addition, contrary to Farrar's representation in response to the 2019 Notice, EBV and Farrar never began using the Bin Tracker software.

41.     On November 5, 2020, Bin There sent EBV and Farrar a Notice of Default (the "2020 Notice") setting forth EBV's solicitation and acceptance of business outside the licensed Territory as a default under Section 1.1 of the Fredericksburg Franchise Agreement and failure to use the Bin Tracker software as a default under Section 9.10 of the Fredericksburg Franchise Agreement . The 2020 Notice stated that the Fredericksburg Franchise Agreement would terminate within thirty days if the defaults were not cured in accordance with the termination provisions of the Fredericksburg Franchise Agreement.   The Notice of Default was received by EBV and Farrar on November 9, 2020.  A copy of the 2020 Notice is Exhibit 4 to this Complaint.

42.     On December 8, 2020, Farrar contacted Bin There.  He stated that he was trying to schedule an appointment with a lawyer, and was hoping to be able to do so the following week or the week after.

9

43.     The following day, December 9, 2020, the last day of the cure period, Farrar contacted Bin There again.  He stated that he had passed along business to MW, and was following the proper procedure concerning referral of customers in another franchisee's territory. He also stated that he had resumed using the Bin Tracker software on November 9, 2020.

44.     Bin There responded to Farrar's December 9, 2020 by email dated December 10, 2020.   In that email, Bin There stated the Farrar's December 9 email was confusing and incomplete, in that while it purported to show the referral of some business to MW, it did not show the disposition of all business in MW's territory, nor did it show any compensation to MW for business not referred. The December 10 email requested evidence of both. The December 10 email also extended the cure period to January 5, 2021.

45.     Farrar and EBV never provided the requested proof of compliance.  In fact, Farrar and EBV were continuing to do business in the MW during the cure period.

46.      In addition, Bin There was informed by the vendor of the Bin Tracker software that Farrar's account was past due, dating back to his credit card having been rejected in 2018, and that it had not reinstated him, contrary to Farrar's representations.

47.     On or about January 4, 2021, counsel for Farrar and EBV contacted counsel for Bin There and initiated settlement discussions.  Counsel had discussions by email and telephone over the next month, but were not able to reach an agreement.  Bin There did not exercise its right to terminate while these discussions were ongoing.

48.     When settlement did not appear imminent a month after the expiration of the extended cure period, Bin There decided to exercise its right to terminate the Fredericksburg Franchise Agreement. By letter dated February 5, 2021, Bin There notified EBV and Farrar of the termination of the Fredericksburg Franchise Agreement for failure to cure the defaults set forth in

10

the 2020 Notice (the "Notice of Termination"). A copy of the Notice of Termination is Exhibit 5 to this Complaint.

49.     Counsel for EBV and Farrar responded that his clients did not accept the termination and intended to continue to do business as before.

## THE DEFENDANTS' CONTINUING OPERATION USING THE BIN THERE DUMP THAT MARKS AND SYSTEM

50.     True to their counsel's word, EBV and Farrar have continued to operate their business as before. EBV and Farrar are continuing to operate a waste removal and disposal business in the Fredericksburg/Richmond corridor. Although EBV has in recent days adopted the name "The Dumpster Guy", it is continuing to use the BTDT Marks. EBV has continued to use green bins bearing the BIN THERE...DUMP that logo in its business since the termination of the Fredericksburg Franchise Agreement.

51.     EBV has put advertising on social media states that it is offering the "Same Great Service" under a "New Name." This advertising improperly trades on the goodwill of the BIN THERE...DUMP THAT system. Furthermore, the advertising heavily employs the green color used by the BIN THERE...DUMP THAT system, and using the phrase "Residential Friendly Dumpsters" that is part of TFI's registered trademark.

52.     For example, the business Facebook page used by EBV and Farrar, currently features the following posts (www.facebook.com/BTDT.Dumpster):





53.    EBV and Farrar are using the following post on their LinkedIn page:



54.     These social media posts employ the BIN THERE...DUMP THAT Marks in conjunction with EBV's business, and represent that "our" design is unique and "our" whole process is to—referring to EBV and Farrar's business, when in fact the "design" shown and the "process" being used are those of Bin There.  Furthermore, the Facebook ads, located at a domain that includes "BTDT" use the BIN THERE...DUMP THAT Marks and logo, as well as Bin There's distinctive green color in a manner that is likely to confuse consumers into believing, contrary to fact that EBV and Farrar's current business somehow associated with EBV's.  These ads could well lead consumers to believe that the entire BIN THERE...DUMP THAT system had changed its name to "The Dumpster Guy" but was offering the "Same Great Service" as it had under the BIN THERE...DUMP THAT brand.

55.     EBV and Farrar have not complied with any of the post-termination obligations set forth in the Fredericksburg Franchise Agreement.

13

56.     In particular, Section 15.2 provides:

Franchisee further agrees that immediately upon termination or expiration of this Agreement, it will:

(a)     cease operating the Business and using the Marks;

(b)     as to property of Franchisee, obscure the Marks from the possibility of public view or, at the option of Franchisor, surrender to Franchisor or destroy all materials bearing the Marks;

(c)     return all copies of the Manual, all confidential information, training aids, any other loaned material, business records, software, brochures and all current customer lists to Franchisor;

(d)     take such action as may be required to cancel all assumed name or equivalent registrations relating to the use of the Marks and to notify the telephone company and all listing agencies of the termination or expiry of Franchisee's right to use any telephone number and any classified and other directory listings associated with the Marks or with the Business and to authorize transfer of same to and vesting in Franchisor or its designee as Franchisor may direct in writing. To facilitate the completion of any such transfer, Franchisee further agrees that upon the request of Franchisor, Franchisee shall pay to the telephone company and directory publisher all charges and other amounts which may be payable in connection with the telephone numbers being so transferred up to and including the date of transfer. Franchisee agrees to reimburse Franchisor upon demand for all amounts paid by Franchisor on account of any such charges as a result of Franchisee's failure to pay same, together with interest thereon as provided in this Agreement for overdue amounts. Upon request of Franchisor at any time during the Term of this Agreement, Franchisee shall execute and deliver to Franchisor such form of telephone number transfer as Franchisor may require to be held for use in accordance with the provisions of this Section 15.2(d).

14

(e)     if it retains possession of the vehicles used in the Business, at its expense, make such reasonable modifications in the exterior decor thereof as Franchisor deems necessary to minimize its identification as a licensee of Franchisor. If Franchisee fails to comply with this obligation, Franchisor and its representatives shall have the right to enter upon the premises where the vehicle(s) is/are and make such modifications thereto at Franchisee's expense without thereby being regarded as committing any trespass or other illegal act and neither Franchisor nor any other person purporting in good faith to act in accordance with the authority granted by this Section 15.1(e) shall be liable in any manner to Franchisee for so doing.

(f)     not directly or indirectly in any manner identify itself, the premises which were occupied by the Business or any other premises, business or vehicles as a franchisee of or otherwise associated with Franchisor or use in any manner or for any purpose any Marks or other indicia of Franchisor.

57.     EBV and Farrar have complied with none of these obligations. They are continuing to operate the business, using the BTDT Marks. They are continuing to use the telephone number associated with their business when it was a franchisee of Bin There. They have failed to return any of the items listed in Section 15.2(c), including without limitation the Manual and the customer lists.

58.     In addition, section 15.3 grants Bin There the option "to purchase from Franchisee at fair market value all approved fixtures, vehicles, equipment and signs in good repair and working order and all approved and usable supplies and materials and saleable merchandise used in the operation of the Business." That section sets out a procedure for determining the fair market value.

15

59.   In the Notice of Termination, Bin There exercised its option to purchase under Section 15.3 with respect to the bins used in the business.  Bin There placed a price of $1,350 per bin on that option.  EBV and Farrar have not responded.

60.   Counsel's email of February 5, 2021, stating that his clients intended to continue to do business as before, constitutes an anticipatory breach of all the post-term obligations, including without limitation the obligations to sell the bins to Bin There.

61.   EBV is also in breach of the post-termination covenant not to compete to which it agreed in the Fredericksburg Franchise Agreement.   EBV agreed not to operate a competing business during the term of the Agreement or for two years after termination in, among other places, the Fredericksburg Territory. Specifically, Section 8.2 of the Franchise Agreement provides:

> Franchisee covenants that, except as otherwise approved in writing by Franchisor, … shall not for a continuous uninterrupted period of two (2) years from the date of: (a) a transfer permitted under Article 16 below; (b) expiration or termination of this Agreement (regardless of the cause for termination); or (c) a final order of a duly authorized arbitrator, panel of arbitrators, or a court of competent jurisdiction (after all appeals have been taken) with respect to any of the foregoing or with respect to the enforcement of this Section 8.2; either directly or indirectly (through, on behalf of, or in conjunction with any persons, partnership, corporation or entity), own, maintain, operate, engage in, or have any interest in any business which is engaged in or concerned with or interested in the waste or trash disposal business within:
>
> (a) the Territory; or
>
> (b) within two (2) miles of the boundary of any territory in the United States and Canada licensed to any other Businesses (whether franchised or company- owned) operating under the System.

16

62.     In the personal guarantee executed by Farrar, he agreed to be individually bound by certain provision of the Franchise Agreement, specifically including the covenants contained in Article 8.

63.     EBV and Farrar's continued operation of a waste collection and removal business within the Territory of its previous BIN THERE…DUMP THAT franchised location constitutes a breach of Article 8.

## COUNT ONE
### (Declaratory Judgment:  Termination of the Franchise Agreement)

64.     The plaintiffs reallege every other paragraph of this Complaint.

65.     In the 2020 Notice,  Bin There informed EBV that the   Fredericksburg Franchise Agreement  the would terminate if EBV did not cure the breaches of the Franchise Agreement within the thirty (30) day cure period set forth in the Franchise Agreement.

66.     EBV failed to cure any of its defaults within the contractually agreed upon time periods.

67.     Bin There exercised its right to terminate the Fredericksburg Franchise Agreement in accordance with its terms.

68.     EBV, through counsel, has disputed that there is a factual basis for the termination of the Fredericksburg Franchise Agreement.

69.     An actual dispute exists as to whether the Fredericksburg Franchise Agreement is subject to termination.

70.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Bin There seeks a declaratory judgment that the Fredericksburg Franchise Agreement terminated.

17

## COUNT TWO
### (Breach of Contract - Post-Termination Obligations)

71.     The plaintiffs reallege every other paragraph of this Complaint.

72.     Despite the valid termination of the Fredericksburg Franchise Agreement, EBV has failed to close and de-identify its waste removal and disposal business. Instead, EBV has continued to operate that business utilizing the BTDT Marks in a manner likely to cause confusion or to deceive and which falsely suggests an association or connection with Bin There and that EBV is operating a duly licensed BIN THERE...DUMP THAT business, all in violation of Section 15 of the Fredericksburg Franchise Agreement.

73.     EBV has also breached the Section 15 of the Franchise Agreement by continuing to use signage, marketing materials, and other materials displaying or associated with the BTDT Marks.

74.     EBV has also breached Section 15 of the Franchise Agreement by using and failing to return Bin There's Manual, confidential information, customer lists and other documents it is required to return after termination of the Franchise Agreement.

75.     EBV has also breached Section 15 of the Franchise Agreement by continuing to use the BTDT Marks in connection with the operation of waste removal and disposal business at the formerly franchised premises, and by failing to cover or obscure the BTDT Marks.

76.     EBV has also breached Section 15 of the Franchise Agreement by failing to comply with the exercise of Bin There's option to purchase the bins used in EBV's business.

77.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to Bin There and the BIN THERE...DUMP THAT system, and will continue to do so in the absence of injunctive relief.

18

78.     In addition, Bin There has sustained actual damages, costs, and attorneys' fees as a result of EBV's breach of the contractual post-termination obligations in an amount that has yet to be determined.

## COUNT THREE
### (Breach of Contract – Post-Term Noncompete)

79.     The plaintiffs reallege every other paragraph of this Complaint.

80.     EBV agreed that it would not, among other things, operate a waste or trash removal business in the Territory for two years after the termination of the Fredericksburg Franchise Agreement.

81.     EBV is continuing to operate a waste or trash removal business in the Territory since the termination of the Franchise Agreement.  Indeed, EBV is continuing to operate a business that is virtually identical in every detail to a BIN THERE…DUMP THAT business, including use of the name and BTDT Marks.

82.     EBV's conduct is in breach of Section 8.2 of the Fredericksburg Franchise Agreement.

83.     Farrar agreed to be personally bound by Article 8 of the Fredericksburg Franchise Agreement, and is also liable for the breach of this provision.

84.     The covenant set forth in Article 8 is reasonable.  It is necessary to protect the goodwill of the Bin There System, and to protect existing franchisees from unfair competition from former franchisees.

85.     The conduct set forth herein has caused and continues to cause irreparable harm and damage to Bin There and the BIN THERE...DUMP THAT system, and will continue to do so in the absence of injunctive relief.

19

86.     In addition, Bin There has sustained actual damages, costs, and attorneys' fees as a result of the defendants' breach of the contractual post-termination covenant not to compete in an amount that has yet to be determined.

## COUNT FOUR
### (Federal Trademark, Service Mark and Trade Dress Infringement—Post-Termination)

87.     The plaintiffs reallege every other paragraph of this Complaint.

88.     EBV and Farrar's use of the BTDT Marks, including without limitation Bin There's federally registered logo bearing the BIN THERE…DUMP THAT name, and marks confusingly similar to the BTDT Marks without authorization or license from the plaintiffs is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the BTDT Marks.

89.     Consumers are likely to believe, contrary to fact, that EBV and Farrar are authorized franchisees of the BIN THERE...DUMP THAT system; that the waste removal and disposal business being operated by them  is a legitimate BIN THERE...DUMP THAT business; and that the services being offered by EBV and Farrar are sponsored or authorized by the plaintiffs.

90.     EBV and Farrar are willfully, intentionally, and knowingly using trademarks, service marks, trade dress, and designations that are identical to, substantially indistinguishable from, or confusingly similar to the BTDT Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114.

91.     Farrar is causing EBV to engage in this infringing activity and, to the extent not directly liable, is a contributory infringer in violation of the Lanham Act.

92.     The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

93.     In addition, the defendants' conduct is causing monetary damage to the plaintiffs in an amount to be proved at trial. The plaintiffs are entitled to the greater of its damages or EBV's profits and all other remedies available under the Lanham Act.

**COUNT FIVE**
**(Federal Unfair Competition – Post Termination)**

94.     The plaintiffs reallege every other paragraph of this Complaint.

95.     EBV's and Farrar's use of the BTDT Marks, including without limitation Bin There's federally registered logo bearing the BIN THERE…DUMP THAT name on bins bearing Bin There's distinctive lime green color, and marks confusingly similar to the BTDT Marks without authorization or license from the plaintiffs and holding themselves out as duly licensed BIN THERE…DUMP THAT franchisees, and falsely representing to the public that they are providing services authorized by the BIN THERE…DUMP THAT system,  constitute false designation of origin, false advertising, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between the defendants and the BIN THERE…DUMP THAT system, or as to the origin, sponsorship, or approval of the goods or services being offered by the defendants, or as to the plaintiffs' approval of the defendants' commercial activities.

96.     The defendants' conduct violates section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (a).

97.     Farrar is causing EBV to engage in this activity and, to the extent not directly liable, is liable to the same extent as EBV under the Lanham Act.

98.     The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

99.     In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial. The plaintiffs are entitled to all remedies authorized by the Lanham Act.

## COUNT SIX
### (Trademark, Service Mark and Trade Dress Infringement—Use of Marks Outside Licensed Territory)

100.    The plaintiffs reallege every other paragraph of this Complaint.

101.    EBV's and Farrar's use of the BTDT Marks, including without limitation Bin There's federally registered logo bearing the BIN THERE…DUMP THAT name on bins bearing Bin There's distinctive lime green color, and marks confusingly similar to the BTDT Marks outside the geographic area for which EBV was granted a license to use the BTDT Marks constitutes infringement in violation of the Lanham Act.

102.    Consumers were likely to believe, contrary to fact, that EBV and Farrar were authorized franchisees of the BIN THERE...DUMP THAT system in the area in which they lived, which was not the case if they lived outside the Fredericksburg Territory.

103.    EBV and Farrar were willfully, intentionally, and knowingly used trademarks, service marks, trade dress, and designations that are identical to, substantially indistinguishable from, or confusingly similar to the BTDT Marks in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114 outside the Fredericksburg Territory in which they were licensed to do so.

104.    Farrar caused EBV to engage in this infringing activity and, to the extent not directly liable, is a contributory infringer in violation of the Lanham Act.

105.    The defendants' conduct caused monetary damage to the plaintiffs in an amount to be proved at trial. The plaintiffs are entitled to the greater of its damages or EBV's profits and all other remedies available under the Lanham Act.

22

## COUNT SEVEN
### (State Law Trademark and Service Mark Infringement)

106.    The plaintiffs reallege every other paragraph of this Complaint.

107.    The BTDT Marks are distinctive and have developed a secondary meaning in the public mind in that consumers have come to know and recognize the BTDT Marks as identifying the services offered in the BIN THERE...DUMP THAT system.

108.    The public is likely to be confused, deceived, or otherwise manipulated by the defendants' unauthorized use of the BTDT Marks and marks confusingly similar to them. Therefore, the defendants' use of the BTDT Marks without right, license, or authorization as described in the preceding paragraphs constitutes trademark and service mark infringement under the laws of the Commonwealth of Virginia.

109.    Farrar is causing EBV to engage in this infringing activity and, to the extent not directly liable, is liable to the same extent as EBV for this infringing activity.

110.    The defendants' conduct is causing irreparable injury to the plaintiffs 'reputation and goodwill, which will continue unabated unless enjoined by this Court.

111.    In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial.

## COUNT EIGHT
### (State Law Unfair Competition)

112.    The plaintiffs reallege every other paragraph of this Complaint.

113.    The defendants' conduct constitutes unfair competition under applicable state law.

114.    Farrar is causing EBV to engage in this activity and, to the extent not directly liable, is liable to the same extent as EBV for this activity.

23

115.    The defendants' conduct is causing irreparable injury to the plaintiffs' reputation and goodwill, which will continue unabated unless enjoined by this Court.

116.    In addition, the defendants' conduct is causing monetary damage to the plaintiffs, in an amount to be proven at trial.

## COUNT NINE
### (Breach of Contract – Territorial Restrictions)

117.    The plaintiffs reallege every other paragraph of this Complaint.

118.    EBV was licensed to operate its BIN THERE…DUMP THAT business only within the boundaries of the Fredericksburg Territory.

119.    The solicitation and servicing of customers outside the Fredericksburg Territory constituted a breach of the territorial grant contained in the Fredericksburg Franchise Agreement.

120.    The breaches of the territorial restrictions damaged Bin There by causing harm to the goodwill of the Bin There system.  Bin There has been damaged in an amount to be proved at trial.

## COUNT TEN
### (Action on Personal Guarantee)

121.    The plaintiffs reallage every other paragraph of this Complaint.

122.    Farrar executed a "Guarantee, Indemnification, and Acknowledgment" (the "Guarantee"), which is annexed as Exhibit E to the Fredericksburg Franchise Agreement.

123.    In the Guarantee, Farrar agreed to "indemnify and hold Franchisor harmless against any and all losses, damages, liabilities, costs, and expenses (including, but not limited to, reasonable attorney's fees, reasonable costs of financial and other investigation, court costs, and fees and expenses) resulting from, consisting of, or arising out of or in connection with any failure

24

by Franchisee to perform any obligation of Franchisee under the Agreement, any amendment thereto, or any other agreement executed by Franchisee referred to therein."

124.    The failure of EBV to perform its obligations under the Fredericksburg Franchise Agreement as described herein have caused damages, costs, and expenses to Bin There, including without limitation the damages suffered by Bin There as a result of EBV's breaches, the termination of the Fredericksburg Franchise Agreement, and the attorneys' fees and costs incurred as a result of EBV's conduct.

125.    In the Guarantee, Farrar also agreed "to be individually bound by all of the covenants contained in Articles 4, 8, 12, 16 and 18 of the Agreement…."

126.    Article 8 contains the covenant not to compete described above.   Farrar is personally bound by that covenant, and is currently in breach of that covenant. The plaintiffs have been damaged by EBV's breach and Farrar is personally liable to the same extent as EBV.

WHEREFORE, the plaintiffs respectfully request that this Honorable Court enter judgment as follows:

A.    For a preliminary and permanent injunction prohibiting EBV and Farrar, and all those acting in privity and concert with any of them from:

> 1.  Using the BTDT Marks or any Marks confusingly similar to them, including without limitation the name BIN THERE…DUMP THAT, the logos used in the BTDT System, and the color green to identify its services, or any name, mark, or logo confusingly similar to them in connection with any business, in any advertising, or on any social media;
>
> 2.  Continuing to breach the post-termination obligations of the Fredericksburg Franchise Agreement, and specifically requiring them to deidentify their

25

business, provide Bin There with its customer lists, return to Bin There all copies of the Confidential Operating Manual and any other document bearing the BTDT Marks or containing information about the BTDT System, assign its business telephone numbers to Bin There or its designee, and convey its bins to Bin There for fair market value, which the Court sets at $1350 per bin unless the parties agree in writing to a different price;

3. Operating or having any interest in a waste or trash disposal business within the Territory or within the two miles from the boundary of the territory of any BIN THERE…DUMP THAT business for two years, commencing with their compliance with the injunction.

B.      Ordering EBV and Farrar to file with the Court and serve on counsel for Bin There, within ten (10) calendar days after entry of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which it has complied with such injunction;

C.      For a declaration that the Fredericksburg Franchise Agreement was lawfully terminated by Bin There;

D.      For actual damages against all Defendants, jointly and severally, in an amount to be proven at trial;

E.      For an accounting of all profits earned by the defendants as a result of their infringement and unfair competition, and payment of such profits to Bin There, in accordance with 15 U.S.C. § 1117(a);

F.      Awarding Bin There, pursuant to 15 U.S.C. §1117, treble the amount of (a) the defendants' profits during the period of infringement, and (b) the plaintiffs' damages from the defendants' infringement;

26

G.     For the award of the plaintiffs' attorneys' fees and costs in connection with this

action, as provided by the Fredericksburg Franchise Agreements, as well as 15 U.S.C. § 1117(a);

and

H.     For such other and further relief as the Court deems just and proper in law or equity.

Respectfully submitted,

/s/James C. Rubinger
PLAVE KOCH PLC
James C. Rubinger
Benjamin B. Reed
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia  21091-3404
Phone:  (703) 774-1200
Fax:  (703)774-1201
Email:  jrubinger@plavekoch.com
breed@plavekoch.com

Attorneys for Plaintiffs
BIN THERE USA, LLC and THAT FRANCHISE,
INC.

March 5, 2021

27